# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| Christopher Thomas and Gerlin Thomas, | § § § | |
| *Plaintiffs,* | § § § | |
| vs. | § | **Civil Action No. 3:18-cv-2160** |
| FCA US LLC, | § § § | |
| *Defendant.* | § § | |

## PLAINTIFFS' COMPLAINT

**To the Honorable United States Judge of Said Court:**

COME NOW, Christopher Thomas and Gerlin Thomas (hereinafter referred to as "Plaintiffs"), by and through undersigned counsel, and respectfully file this Complaint against FCA US LLC (hereinafter referred to as "Defendant").

In support hereof, Plaintiffs would state and show the following:

### I. Parties

1. Plaintiffs, Christopher Thomas and Gerlin Thomas are married. They reside in and are citizens of Mesquite, Texas.

2. Defendant FCA US LLC (FCA stands for Fiat Chrysler Automobiles) is an entity formerly known as Chrysler Group LLC, incorporated in Delaware, with its principal place of business in Auburn Hills, Michigan. Defendant's sole member is

FCA North American Holdings LLC, an entity incorporated in Delaware with its principal place of business in New York. FCA North America Holding LLC's sole member is Fiat Chrysler Automobiles N.V., a publicly traded company incorporated in the Netherlands with its principal place of business in London. Service of process upon this Defendant may be had by serving its registered agent for service, Corporation Service Company d/b/a CT Corporation System, at 1999 Bryan, Suite 900, Dallas, Texas 75201.

## II. Jurisdiction

3. This Court has jurisdiction over the lawsuit under the provisions of 28 U.S.C. Section 1332.

4. The parties to this lawsuit are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

## III. Facts

5. On or about February 11, 2017, Christopher Thomas was driving a 2015 Dodge Ram 2500 (VIN# 1C6RR6GG8FS552787) traveling northbound on John Carpenter Freeway in Dallas, Texas.

6. The subject vehicle was designed by Defendant.

7. The subject vehicle was manufactured by Defendant.

8. The subject vehicle was also assembled and tested by Defendant.

9. While traveling, the subject vehicle struck another vehicle.

10. At the time of the accident, Christopher Thomas was properly seated and properly wearing the available seat belt.

11. There are five (5) recognized crashworthiness principles in the automobile industry/throughout the world. They are as follows:

    1. Maintain survival space;
    2. Provide proper restraint throughout the entire accident;
    3. Prevent ejection;
    4. Distribute and channel energy; and
    5. Prevent post-crash fires.

12. When the National Highway Traffic Safety Administration (NHTSA) created the Federal Motor Vehicle Safety Standard (FMVSS) in the late 1960's, the preamble to the safety standards included a crashworthiness definition similar to that used above, "that the public is protected against unreasonable risk of crashes occurring as a result of the design, construction, or performance of motor vehicles and is also protected against unreasonable risk of death or injury in the event crashes do occur."

13. The National Transportation Safety Board (NTSB) has also stated that, "Vehicle crashworthiness refers to the capacity of a vehicle to protect its occupants from crash forces. This protection—which is achieved, in part, by vehicle structure—includes maintaining a survival space around the occupant, retaining the occupant within that space, and reducing the forces applied to the occupant."

14. Crashworthiness safety systems in a vehicle must work together like links in a safety chain. If one link fails, the whole chain fails.

15. Lee Iacocca, former President of Ford, stated, while President and CEO of Chrysler, that "Every American has the right to a safe vehicle." General Motors has stated in the past that, "The rich don't deserve to be safer … Isn't it time we realized safety is not just for the pampered and the privileged? Safety is for all."

## IV. Cause(s) of Action as to Defendant

16. It was entirely foreseeable to and well-known by Defendant that accidents and incidents involving its vehicles, such as occurred herein, would on occasion take place during the normal and ordinary use of said vehicle.

17. The injuries complained of occurred because the vehicle in question was not reasonably crashworthy, and was not reasonably fit for unintended, but clearly foreseeable, accidents. The vehicle in question was unreasonably dangerous in the event it should be involved in an incident such as occurred herein.

18. Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question.

19. As detailed herein, the vehicle contains and/or Defendant has committed either design, manufacturing, marketing, assembling, and/or testing defects.

20. Defendant either knew or should have known of at least one safer alternative design which would have prevented the serious injuries to Christopher Thomas.

21. In addition to the foregoing, Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the vehicle was unreasonably dangerous as designed, manufactured, assembled, marketed, and/or tested because Defendant knew and/or should have known of the following, non-exhaustive list of defects:

    a.    The vehicle violated principles of crashworthiness;
    b.    The vehicle failed to provide proper restraint;
    c.    The vehicle failed to provide supplemental restraint;
    d.    The vehicle's airbag failed to deploy in a must fire event;
    e.    The vehicle's airbag failed to deploy when the deployment threshold and time duration was met;
    f.    The vehicle's airbag provided no utility;
    g.    The vehicle's restraint system violated FMVSS 208;
    h.    The vehicle's restraint system violated Defendant's performance standards and internal objectives;
    i.    The vehicle's restraint system failed to prevent injurious contact with the steering rim and wheel which led to the brain injury;
    j.    The vehicle's restraint system violated the purpose of an SRS;
    k.    The vehicle's restraint system violated the purpose of a seat belt system;
    l.    The Defendant failed to conduct FEM, FEA, CAD, CAE, finite element modeling or simulated accident to evaluate different designs and material as it relates to sensor development and performance and SRS development and performance; and
    m.    The defects and/or negligence were the direct, substantial, producing, and/or proximate cause of the injuries and damages in question.

22.    Defendant failed to conduct proper testing and engineering analysis during the design, development and testing of the vehicle.

23.    Defendant was negligent in the manufacture, assembly, marketing, and/or testing of the vehicle in question.

24.    In designing a vehicle, efforts should be made by manufacturers to identify potential risks, hazards, and/or dangers that can lead to serious injury or death;

25.    Once potential risks, hazards, and/or dangers are identified, then the potential risks, hazards, or dangers should be eliminated if possible.

26. If the potential risks, hazards, and/or dangers can't be eliminated, then they should be guarded against.

27. If the potential risks, hazards, and/or dangers can't be eliminated or guarded against, they should at least be warned about.

28. A company that does not conduct a proper engineering analysis that would help it to identify potential risks, hazards, and/or dangers that could seriously injure someone is negligent.

29. Based upon information and/or belief, Defendant either used or knew about advanced safety features used in Europe, Australia, Japan and some other country and chose not to offer those safety features to American consumers.

30. Defendant's occupant protection philosophy and design philosophy are utilized in various model vehicles, including ones sold overseas in other markets.

31. When Defendant designed the subject vehicle, it did not reinvent the wheel. Defendant used an enormous amount of human capital which had been acquired from numerous different engineers which had worked on many prior vehicle. This knowledge would have been utilized in different aspects of the various designs of the subject vehicle.

32. Defendant is currently in exclusive possession and control of all the technical materials and other documents regarding the design, manufacture, and testing of the vehicle in question. Defendant is also in possession of what, if any, engineering analysis it performed.

33. However, it is expected that after all of these materials are produced in discovery and/or after Defendant's employees and corporate representatives have been deposed, additional allegations may come to light.

34. Lastly, the materials from other models, years, and countries will provide evidence regarding what Defendant knew, when they knew it, and about what was utilized or not utilized as well as the reasons why.

35. The foregoing acts and/or omissions, defects, and/or negligence of Defendant were the producing, direct, proximate, and/or legal cause of Christopher Thomas' serious injuries and Plaintiffs' damages.

## V. Damages to Plaintiffs

36. As a result of the acts and/or omissions of the Defendant, Christopher Thomas has endured pain and suffering, impairment, and disfigurement, interference with his daily activities and reduced capacity to enjoy life as a result of his injuries.

37. As a result of the acts and/or omission of the Defendant, Christopher Thomas has suffered lost wages in the past in all likelihood into the future as a result of his injuries.

38. As a result of the acts and/or omissions of the Defendant, Plaintiffs have become obligated to pay extensive medical expenses as a result of Christopher Thomas' injuries.

39. As a result of the acts and/or omissions of the Defendant, Gerlin Thomas has suffered past and future; loss of care, maintenance, support, service, advice, counsel,

reasonable contributions of the pecuniary value, loss of companionship and society, loss of consortium and mental anguish as a result of the injuries to Christopher Thomas.

40. The above and foregoing acts and/or omissions of the Defendant, resulting in the serious injuries to Christopher Thomas, have caused actual damages to Plaintiffs in excess of the minimum jurisdictional limits of this Court.

## VI. Prayer

41. For the reasons presented herein, Plaintiffs pray that Defendant be cited to appear and answer, and that upon a final trial of this cause, Plaintiffs recover judgment against Defendant for:

    a. actual damages;
    b. prejudgment and post-judgment interest beginning February 11, 2017
    c. costs of suit; and
    d. all other relief, general and special, to which Plaintiffs are entitled to at law and/or in equity, and/or which the Court deems proper.

Respectfully submitted,

**The TRACY firm**


   /s E. Todd Tracy
E. Todd Tracy (Lead Counsel)
State Bar No. 20178650
EToddTracy@vehiclesafetyfirm.com
Andrew G. Counts
State Bar No. 24036408
ACounts@vehiclesafetyfirm.com
Wendell P. "Chip" Martens, Jr.
State Bar No. 24002528
CMartens@vehiclesafetyfirm.com
4701 Bengal Street
Dallas, Texas 75235
(214) 324-9000 – Phone
(972) 387-2205 – Fax

**Attorneys for Plaintiffs**